## Case No. 5,127.

Case of FRIES.

[Whart. St. Tr. 610.]

Circuit Court, D. Pennsylvania.   April 29, 1800.

CHASE, Circuit Justice (charging jury):— Gentlemen of the Jury: John Fries, the prisoner at the bar, stands indicted for the crime of treason, of levying war against the United States, contrary to the constitution. By the constitution of the United States (article 3, § 3) it is declared, "that treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort." By the same section it is further declared, "that no person shall be convicted of treason, unless on the testimony of two witnesses to the same overt act, or on confession in open court;" and that "the congress shall have power to declare the punishment of treason." Too much praise cannot be given to this constitutional definition of treason, and the requiring such full proof for conviction; and declaring, that no attainder of treason shall work corruption of blood or forfeiture, except during the life of the person attainted. This constitutional definition of treason is a question of law. Every proposition in any statute (whether more or less distinct, whether easy or difficult to comprehend) is always a question of law. What is the true meaning and true import of any statute, and whether the case stated comes within it, is a question of law, and not of fact. The question in an indictment for levying war against (or adhering to the enemies of) the United States, is, whether the facts stated do, or do not amount to levying war, within the contemplation and construction of the constitution. It is the duty of the court in this case, and in all criminal cases, to state to the jury their opinion of the law arising on the facts; but the jury are to decide on the present, and in all criminal cases, both the law and the facts, on their consideration of the whole case. It is the opinion of the court, that any insurrection or rising of any body of the people, within the United States, to attain or effect by force or violence any object of a great public nature, or of public and general (or national) concern, is a levying of war against the United States, within the contemplation and construction of the constitution. On this general position the court are of opinion, that any such insurrection or rising to resist, or to prevent by force or violence, the execution of any statute of the United States, for levying or collecting taxes, duties, imposts, or excises; or for calling forth the militia to execute the laws of the Union, or for any other object of a general nature or national concern, under any pretence, as that the statute was unjust, burthensome, oppressive, or unconstitutional, is a levying war against the United States, within the contemplation and construction of the constitution. The reason for this opinion is, that an insurrection to resist or prevent, by force, the execution of any statute of the United States, has a direct tendency to dissolve all the bands of society, to destroy all order and all laws, and also all security for the lives, liberties and property of the citizens of the United States. The court are of opinion, that military weapons (as guns and swords, mentioned in the indictment) are not necessary to make such insurrection or rising amount to a levying war, because numbers may supply the want of military weapons, and other instruments may effect the intended mischief. The legal guilt of levying war may be incurred without the use of military weapons or military array. The court are of opinion that the assembling bodies of men, armed and arrayed in a warlike manner, for purposes only of a private nature, is not treason, although the judges, or other peace officers, should be insulted or resisted, or even great outrages committed to the persons or property of our citizens.

The true criterion to determine whether acts committed are treason, or a less offence (as a riot), is the quo animo, or the intention, with which the people did assemble. When the intention is universal or general, as to effect some object of a general public nature, it will be treason, and cannot be considered, construed, or reduced to a riot. The commission of any number of felonies, riots, or other

misdemeanours, cannot alter their nature, so as to make them amount to treason; and, on the other hand, if the intention and acts combined amount to treason, they cannot be sunk down to a felony or riot. The intention with which any acts (as felonies, the destruction of property, or the like) are done, will show to what class of crimes the case belongs. The court are of opinion, that if a body of people conspire and meditate an insurrection to resist or oppose the execution of any statute of the United States by force, that they are only guilty of a high misdemeanour; but if they proceed to carry such intention into execution by force, that they are guilty of the treason of levying war, and the quantum of the force employed neither lessens nor increases the crime—whether by one hundred or one thousand persons, is wholly immaterial. The court are of opinion, that a combination or conspiracy to levy war against the United States is not treason, unless combined with an attempt to carry such combination or conspiracy into execution; some actual force or violence must be used, in pursuance of such design to levy war; but that it is altogether immaterial whether the force used is sufficient to effectuate the object—any force connected with the intention will constitute the crime of levying war. This opinion of the court is founded on the same principles, and is, in substance, the same as the opinion of the circuit court for this district, on the trials (in April, 1795) of Vigol and Mitchell, who were both found guilty by the jury, and afterwards pardoned by the late president.

At the circuit court for the district (April term, 1799), on the trial of the prisoner at the bar, Judge Iredell delivered the same opinion, and Fries was convicted by the jury. [Case No. 5,126.]

To support the present indictment against the prisoner at the bar, two facts must be proved to your satisfaction: First. That some time before the finding of the indictment, there was an insurrection (or rising) of a body of people in the county of Northampton, in this state, with intent to oppose and prevent, by means of intimidation and violence, the execution of a law of the United States, entitled, "An act to provide for the valuation of lands and dwelling houses, the enumeration of slaves within the United States;" or, of another law of the United States, entitled, "An act to lay and collect a direct tax within the United States;" and that some acts of violence were committed by some of the people so assembled, with intent to oppose and prevent, by means of intimidation and violence, the execution of both, or of one of the said laws of congress. In the consideration of this fact, you are to consider and determine with what intent the people assembled at Bethlehem, whether to effect, by force. a public or a private measure. The intent with which the people assembled at Bethlehem, in Northampton, is a necessary ingredient to the fact of assembling, and to be proved like any fact, by the declarations of those who assembled, or by acts done by them. When the question is, "What is a man's intent?" it may be proved by a number of connected circumstances, or by a single fact. If, from a careful examination of the evidence, you shall be convinced that the real object and intent of the people assembled at Bethlehem was of a public nature (which it certainly was, if they assembled with intent to prevent the execution of both of the above-mentioned laws of congress, or either of them), it must then be proved to your satisfaction, that the prisoner at the bar incited, encouraged, promoted, or assisted in the insurrection, or rising of the people, at Bethlehem, and the terror they carried with them, with intent to oppose and prevent, by means of intimidation and violence, the execution of both the above-mentioned laws of congress, or either of them; and that some force was used by some of the people assembled at Bethlehem. In the consideration of this fact, the court think proper to assist your inquiry by giving you their opinion.

In treason, all the participes criminis are principals; there are no accessaries to this crime. Every act, which, in the case of felony, would render a man an accessary, will, in the case of treason, make him a principal. To render any person an accomplice and principal in felony, he must be aiding and abetting at the fact; or ready to afford assistance, if necessary. If a person be present at a felony, aiding and assisting, he is a principal. It is always material to consider whether the persons charged are of the same party, upon the same pursuit, and under the expectation of mutual defence and support. All persons present, aiding, assisting, or abetting any treasonable act, are principals. All persons, who are present and countenancing, and are ready to afford assistance, if necessary, to those who actually commit any treasonabe act, are also principals. If a number of persons assemble and set out upon a common design, as to resist and prevent. by force, the execution of any law, and some of them commit acts of force and violence, with intent to oppose the execution of any law, and others are present to aid and assist, if necessary. they are all principals. If any man joins and acts with an assembly of people, his intent is always to be considered and adjudged to be the same as theirs; and the law, in this case, judgeth of the intent by the fact. If a number of persons combine or conspire to effect a certain purpose, as to oppose, by force, the execution of a law, any act of violence done by any one of them, in pursuance of such combination, and with intent to effect such object, is, in consideration of law, the act of all who are present when such act of violence is committed. If persons collect together to act for one and the same common end, any act done by any one of them, with intent to effectuate such common end, is a fact that may be given in evi-

dence against all of them; the act of each is evidence against all concerned. I shall not detain you at this late hour to recapitulate the facts:—you have taken notes, and they have been stated with accuracy and great candor by Mr. Attorney. I will only remark, that all the evidence relative to transactions before the assembling of the armed force at Bethlehem, are only to satisfy you of the intent with which the body of the people assembled there. If either of the three overt acts (or open deeds) stated in the indictment, is proved to your satisfaction, THE COURT are of opinion, that it is sufficient to maintain the indictment; for THE COURT are of opinion that every overt act is treasonable. As to accomplices—they are legal witnesses, and entitled to credit, unless destroyed by testimony in court. If, upon consideration of the whole matter (law as well as fact), you are not fully satisfied, without any doubt, that the prisoner is guilty of the treason charged in the indictment, you will find him not guilty; but if, upon consideration of the whole matter (law as well as fact), you are convinced that the prisoner is guilty of the treason charged in the indictment, you will find him guilty.

The jury retired for the space of two hours, and brought in their verdict, "Guilty."

After the verdict was given, Judge CHASE, with great feeling and sensibility, addressed the prisoner, observing that, as he had no counsel on the trial, if he, or any person for him, could point out any flaw in the indictment, or legal ground for arrest of judgment, ample time would be allowed for that purpose.

Friday, May 2. THE COURT this morning called before them Charles Deshler, a juror on the above trial of John Fries, who, on the first evening of the said trial, on the adjournment of the court, separated from the jury and retired to his lodgings. Mr. Hopkinson, on behalf of Mr. Deshler, produced his own affidavit, and that of two others, which proved that, on the said evening, Charles Deshler was inadvertently separated from his brethren by the crowd, in going out of the jury box; that he did not know to what place the jury had adjourned: that he then proceeded to his lodgings, where he cautiously avoided all conversation respecting the trial depending. THE COURT, satisfied by this representation of the innocence of Mr. Deshler, ordered that he be discharged, and that the beforementioned affidavit be entered on the record of the court.

The prisoner being set at the bar, Judge CHASE, after observing to the other defendants that what he had to say to Fries would apply generally to them, proceeded:—

John Fries, you have been already informed, that you stood convicted of the treason, charged upon you by the indictment on which you have been arraigned, of levying war against the United States. You have had a legal, fair, and impartial trial, with every indulgence that the law would permit. Of the whole panel, you peremptorily challenged thirty-four, and with truth I may say, that the jury who tried you were of your own selection and choice. Not one of them before had ever formed and delivered any opinion respecting your guilt or innocence. The verdict of the jury against you was founded on the testimony of many creditable and unexceptionable witnesses. It was apparent from the conduct of the jury, when they delivered their verdict, that if innocent, they would have acquitted you with pleasure; and that they pronounced their verdict against you with great concern and reluctance, from a sense of duty to their country, and a full conviction of your guilt. The crime of which you have been found guilty is treason; a crime considered, in the most civilized and the most free countries in the world, as the greatest that any man can commit. It is a crime of so deep a dye, and attended with such a train of fatal consequences, that it can receive no aggravation; yet the duty of my station requires that I should explain to you the nature of the crime of which you are convicted; to show the necessity of that justice which is this day to be administered, and to awaken your mind to proper reflections and a due sense of your own condition, which, I imagine, you must have reflected upon during your long confinement. You are a native of this country—you live under a constitution (or form of government) framed by the people themselves; and under laws made by your representatives, faithfully executed by independent and impartial judges. Your government secures to every member of the community equal liberty and equal rights; by which equality of liberty and rights, I mean, that every person, without any regard to wealth, rank, or station, may enjoy an equal share of civil liberty, and equal protection of law, and an equal security for his person and property. You enjoyed, in common with your fellow-citizens, all those rights. If experience should prove that the constitution is defective, it provides a mode to change or amend it, without any danger to public order, or any injury to social rights. If congress, from inattention, error in judgment, or want of information, should pass any law in violation of the constitution, or burdensome or oppressive to the people, a peaceable, safe and ample remedy is provided by the constitution. The people themselves have established the mode by which such grievances are to be redressed; and no other mode can be adopted without a violation of the constitution and of the laws. If congress should pass a law contrary to the constitution, such law would be void, and the courts of the United States possess complete authority, and are the only tribunal to decide, whether any law

is contrary to the constitution. If congress should pass burdensome or oppressive laws, the remedy is with their constituents, from whom they derive their existence and authority. If any law is made repugnant to the voice of a majority of their constituents, it is in their power to make choice of persons to repeal it; but until it is repealed, it is the duty of every citizen to submit to it, and to give up his private sentiments to the public will. If a law which is burdensome, or even oppressive in its nature or execution. is to be opposed by force; and obedience cannot be compelled, there must soon be an end to all government in this country. It cannot be credited by dispassionate men. of any information, that congress will intentionally make laws in violation of the constitution. contrary to their sacred trust. and solemn obligation to support it. None can believe that congress will wilfully or intentionally impose unreasonable and unjust burdens on their constituents, in which they must participate. The most ignorant man must know, that congress can make no law that will not affect them equally, in every respect, with their constituents. Every law that is detrimental to their constituents must prove hurtful to themselves. From these considerations, every one may see, that congress can have no interest in oppressing their fellow-citizens. It is almost incredible, that a people living under the best and mildest government in the whole world, should not only be dissatisfied and discontented, but should break out into open resistance and opposition to its laws.

The insurrection in 1794, in the four western counties of this state (particularly in Washington), to oppose the execution of the laws of the United States, which laid duties on stills, and spirits distilled, within the United States, is still fresh in memory: it originated from prejudices and misrepresentations industriously disseminated and diffused against those laws. Either persons disaffected to our government, or wishing to aggrandize themselves, deceived and misled the ignorant and uninformed class of the people. The opposition commenced in meetings of the people, with threats against the officers, which ripened into acts of outrage against them, and were extended to private citizens. Committees were formed to systematize and inflame the spirit of opposition. Violence succeeded to violence, and the collector of Fayette county was compelled to surrender his commission and official books; the dwelling house of the inspector (in the vicinity of Pittsburgh) was attacked and burnt; and the marshal was seized. and obtained his liberty on a promise to serve no other process on the west side of the Alleghany mountains. To compel submission to the laws, the government were obliged to march an army against the insurgents, and the expense was above one million one hundred thousand dollars. Of the whole number of insurgents

(many hundreds) only a few were brought to trial; and of them only two were sentenced to die (Vigol and Mitchell), and they were pardoned by the late president. Although the insurgents made no resistance to the army sent against them, yet not a few of our troops lost their lives, in consequence of their great fatigue, and exposure to the severity of the season. This great and remarkable clemency of the government had no effect upon you, and the deluded people in your neighbourhood. The rise, progress, and termination of the late insurrection bear a strong and striking analogy to the former; and it may be remembered that it has cost the United States 80,000 dollars. It cannot escape observation, that the ignorant and uninformed are taught to complain of taxes, which are necessary for the support of government, and yet they permit themselves to be seduced into insurrections which have so enormously increased the public burthens, of which their contributions can scarcely be calculated. When citizens combine and assemble with intent to prevent by threats, intimidation and violence, the execution of the laws, and they actually carry such traitorous designs into execution, they reduce the government to the alternative of prostrating the laws before the insurgents, or of taking necessary measures to compel submission. No government can hesitate. The expense, and all the consequences, therefore, are not imputable to the government, but to the insurgents. The mildness and lenity of our government are as striking on the late as on the former insurrection. Of nearly one hundred and thirty persons who might have been put on their trial for treason, only five have been prosecuted and tried for that crime.

In the late insurrection, you, John Fries, bore a conspicuous and leading part. If you had reflected, you would have seen that your attempt was as weak as it was wicked. It was the height of folly in you to suppose that the great body of our citizens, blessed in the enjoyment of a free republican government of their own choice. and of all rights civil and religious; secure in their persons and property; and conscious that the laws are the only security for their preservation from violence, would not rise up as one man to oppose and crush so ill-founded, so unprovoked an attempt to disturb the public peace and tranquillity. If you could see in a proper light your own folly and wickedness, you ought now to bless God that your insurrection was so happily and speedily quelled by the vigilance and energy of our government, aided by the patriotism and activity of your fellow-citizens, who left their homes and business and embodied themselves in the support of its laws. The annual, necessary expenditures for the support of any extensive government like ours must be great; and the sum required can only be obtained by taxes, or loans. In all countries the levy-

ing taxes is unpopular, and a subject of complaint. It appears to me that there was not the least pretence of complaint against, much less of opposition and violence to, the law for levying taxes on dwelling-houses; and it becomes you to reflect that the time you chose to rise up in arms to oppose the laws of your country, was when it stood in a very critical situation with regard to France, and on the eve of a rupture with that country. I cannot omit to remind you of another matter, worthy of your consideration. If the marshal, or any of the posse, or any of the four friends of government who were with him, had been killed by you, or any of your deluded followers, the crime of murder would have been added to the crime of treason. In your serious hours of reflection, you ought to consider the consequences that would have flowed from the insurrection, which you incited, encouraged, and promoted, in the character of a captain of militia, whose incumbent duty it is to stand ready (whenever required), to assist and defend the government and its laws, if it had not been immediately quelled. Violence, oppression and rapine, destruction, waste, and murder, always attend the progress of insurrection and rebellion; the arm of the father would have been raised against the son; that of the son against the father; a brother's hand would have been stained with brother's blood; the sacred bands of friendship would have been broken, and all the ties of natural affection would have been dissolved.

The end of all punishment is example; and the enormity of your crime requires that a severe example should be made to deter others from the commission of like crimes in future. You have forfeited your life to justice. Let me, therefore, earnestly recommend to you most seriously to consider your situation—to take a review of your past life, and to employ the very little time you are to continue in this world in endeavors to make your peace with that God whose mercy is equal to his justice. I suppose that you are a Christian; and as such I address you. Be assured, my guilty and unhappy fellow-citizen, that without serious repentance of all your sins, you cannot expect happiness in the world to come; and to your repentance you must add faith and hope in the merits and mediation of Jesus Christ. These are the only terms on which pardon and forgiveness are promised to those who profess the Christian religion. Let me, therefore, again entreat you to apply every moment you have left in contrition, sorrow and repentance. Your day of life is almost spent; and the night of death fast approaches. Look up to the Father of Mercies, and God of Comfort. You have a great and immense work to perform, and but little time in which you must finish it. There is no repentance in the grave, for after death comes judgment; and as you die, so you must be judged. By repentance and faith, you are the object of God's mercy; but if you will not repent, and have faith and dependence upon the merits of the death of Christ, but die a hardened and impenitent sinner, you will be the object of God's justice and vengeance. If you will sincerely repent and believe, God has pronounced his forgiveness; and there is no crime too great for his mercy and pardon. Although you must be strictly confined for the very short remainder of your life, yet the mild government and laws which you have endeavoured to destroy permit you (if you please) to converse and commune with ministers of the gospel; to whose pious care and consolation, in fervent prayers and devotion, I most cordially recommend you. What remains for me is a very painful, but a very necessary part of my duty. It is to pronounce that judgment which the law has appointed for crimes of this magnitude. The judgment of the law is, and this court doth award, "that you be hanged by the neck until dead;" and I pray God Almighty to be merciful to your soul!